UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CARL HART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. _____ |
| ) | |
| THE ARCELORMITTAL USA LLC PENSION ) | |
| PLAN, formerly known as THE ARCELORMITTAL ) | |
| USA INC. PENSION PLAN, and THE ) | |
| ARCELORMITTALUSA LLC PENSION PLAN ) | |
| SUPPLEMENT FOR HOURLY AND BARGAINING ) | |
| UNIT EMPLOYEES OF ARCELORMITTAL USA LLC ) | |
| AND SUBSIDIARIES, formerly known as THE ) | |
| ARCELORMITTAL USA INC. PENSION PLAN ) | |
| SUPPLEMENT FOR HOURLY AND BARGAINING ) | |
| UNIT EMPLOYEES OF ARCELORMITTAL USA INC. ) | |
| AND SUBSIDIARIES, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

The Plaintiff, Carl Hart, by and through the undersigned counsel, Jonathan Halm, files this Complaint against the ArcelorMittal USA LLC Pension Plan, and the ArcelorMittal USA LLC Pension Plan Supplement for Hourly and Bargaining Unit Employees of ArcelorMittal USA LLC and Subsidiaries, (hereinafter, collectively, "the Plan and the Plan Supplement"), and as cause therefore, states as follows:

**I. JURISDICTION AND VENUE**

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq*. The Court has jurisdiction of this case pursuant to 28 U.S.C. §1331, in that this action arises under the laws of the United States. Specifically, Carl Hart brings this action to enforce his rights under ERISA as authorized by 29 U.S.C. §1132.

2. Carl Hart is a resident of Gary, Indiana and a citizen of the State of Indiana.

3. The Plan and the Plan Supplement is/are an employee pension plan and plan supplement administered in the Northern District of Indiana, from 3210 Watling Street, in East Chicago, Indiana.

4. Venue in the Northern District of Indiana is appropriate by virtue of the Plan and the Plan Supplement being administered in this District.

1

## II. FACTUAL ALLEGATIONS

5.  Plaintiff Carl Hart was an employee of ArcelorMittal USA, Inc. and its predecessors, at a steel mill in Indiana Harbor, for nearly 30 years. Mr. Hart's various jobs during his nearly 30 years of service included "lid man", "line operator" in 3 Cold Strip East mill, and "slab checker" in the 80-inch mill.

6.  As an employee of ArcelorMittal USA, Inc. and its predecessors, Mr. Hart was a Participant in the ArcelorMittal USA, Inc. Pension Plan, the Mittal Steel USA, Inc. Pension Plan and the Ispat Inland, Inc. Pension Plan.

7.  Defendants, the ArcelorMittal USA LLC Pension Plan, and the ArcelorMittal USA LLC Pension Plan Supplement for Hourly and Bargaining Unit Employees of ArcelorMittal USA LLC and Subsidiaries are the successors to the foregoing-described plans, and the appropriate parties for Carl Hart to sue in this case to enforce his pension rights.

8.  True and correct copies of the governing Plan, the Plan Supplement, and a Summary Plan Description for the Plan Supplement are attached hereto as Exhibits "A" through "C".

9.  The Plan and the Plan Supplement provide that Plan Participant may be eligible for a "Permanent Incapacity Pension" if certain conditions are met.

10.  The Permanent Incapacity Pension benefit is part of an employee pension benefit plan established or maintained pursuant to a collective bargaining agreement between Carl Hart's union and his former employers. By its express terms or as a result of surrounding circumstances, the employee pension benefit plan and the Permanent Incapacity Pension benefit provides retirement income to employees.

11.  The Plan Supplement Effective August 1, 2004 provides concerning "eligibility" for a Permanent Incapacity Pension, that:

> "2.5   Permanent Incapacity Pension
>
> (a)  Any Participant who has completed at least 15 Years of Vesting Service and has a Permanent Incapacity shall, upon his Retirement Date, be eligible for a pension (hereinafter "Permanent Incapacity Pension").  A Participant shall be considered to have a Permanent Incapacity only if:
>
>> (1) he has been totally disabled by bodily injury or disease so as to be prevented thereby from Engaging in any employment of the type covered by the Basic Agreement, or engaging in any Suitable employment of the type covered by this Supplement; and
>>
>> (2) such total disability shall have continued for a period of five consecutive months and, in the Opinion of a qualified physician, it will be permanent and continuous during the remainder of his life.

> Notwithstanding anything herein to the contrary, a Participant who has been granted disability benefits under Social Security with an award effective date during the period he was accruing Benefit Service will be deemed to be permanently incapacitated within the meaning of this Section 2.5."

12.     Plaintiff, Carl Hart is deemed to be Permanently Incapacitated within the meaning of Section 2.5, because he has been granted disability benefits under Social Security with an award effective date of August 11, 2007, which is during the period he was accruing benefit service under the Plan and the Plan Supplement. Carl Hart's award decision from the Social Security Administration is attached hereto as Exhibit D.

13.     Carl Hart has in fact been Permanently Incapacitated within the meaning of Section 2.5 since August 11, 2007.

14.      Carl Hart provided the Plan, the Plan Supplement and the Plan Administrator with sufficient medical evidence to verify his Permanent Incapacity and his eligibility for a Permanent Incapacity Pension.

15.     Plaintiff, Carl Hart, has at least 15 years of Vesting Service under the terms of the Plan and the Plan Supplement. Carl Hart's Vesting Service Date and Benefit Service Date is February 2, 1981.

16.     Plaintiff, Carl Hart was and is fully vested in his pension benefits under the Plan and the Plan Supplement.

17.     Plaintiff, Carl Hart is eligible and entitled to a Permanent Incapacity Pension.

18.     According to the Plan Supplement, Plaintiff, Carl Hart is eligible for a Permanent Incapacity Pension under the Plan Supplement, as of his "Retirement Date". The Plan Supplement defines Carl's "Retirement Date" as his "Separation Date", because Carl applied for his pension after his Separation Date. The Plan Supplement provides in pertinent part:

> "<u>Retirement Date</u> means:
> …
>> (2) In the case of a Participant who applies for a pension after his Separation Date, his Separation Date, provided that he was then eligible for an immediate or deferred pension under the Plan; and provided, further, that solely for purposes of this subparagraph (2), a Participant shall not be deemed to have incurred his Separation Date if he is then   employed by an entity described in subparagraph (C)(i) or (ii) above."

19.     Carl Hart's employment was terminated on August 11, 2007. Under the Plan Supplement, Carl's "Separation Date" therefore is September 1, 2007, which is, "the first day of the calendar month immediately following...the date of [Carl's] termination of employment with the Company and all Affiliates".  The relevant language of the Plan Supplement provides:

> "<u>Separation Date</u> means… for all other purposes hereunder, the first day of the calendar month immediately following the earliest to occur of:
>
> (1) the date of the Participant's termination of employment with the Company and all Affiliates; and;
>
> (2) the date which is the second anniversary of the commencement of the Participant's absence rom work for the Company and all Affiliates due to layoff or Permanent Incapacity; and
>
> (3) the date following a 30-day period beginning on the day after the payment of statutory Compensation for disability incurred during the course of employment with the Company or an Affiliate or the end of the period used in calculating a lump sum payment for such disability, if the Participant does not perform any duties for the Company or an Affiliate during such 30-day period "

20.     Carl's termination of employment with the Company and its Affiliates is the earliest to occur of items (1)-(3) of the foregoing paragraph.

21.     The Plan and the Plan Supplement do not require an application for benefits as a condition of eligibility for a Permanent Incapacity Pension.

22.     The Plan and the Plan Supplement do not permit the amount of Carl Hart's pension to be reduced in the event that he does not notify the Plan Administrator of his intent to commence benefits.

23.     The Plan and the Plan Supplement permit a Participant to make application for a pension at any time prior to, or subsequent to, his or her Separation Date.

24.     Section 4.2(b) of the Plan Supplement states that, "In the case of a Participant who is eligible for Permanent Incapacity Pension, the first installment of any Regular Pension shall be payable for the first full calendar month after his Retirement Date."

25.      Carl Hart's Retirement Date and Separation Date are September 1, 2007 according to the plain language of the Plan and the Plan Supplement.

26.     The first installment of Carl Hart's Permanent Incapacity Pension is payable starting in October of 2007, which is the first full calendar month after September 1, 2007.

27.     Plaintiff Carl Hart notified the Plan of his intent to commence benefits by letter, on or about March 15, 2018.

28.     On April 24, 2018 the Plan awarded Carl Hart a Permanent Incapacity Pension, with a benefit effective date retroactive to April 1, 2018

29.     On April 30th, 2018, Plaintiff Carl Hart, by counsel, sent a letter to the ArcelorMittal Pension Service Center, requesting clarification on whether or not the Plan had considered his request for a Permanent Incapacity Pension retroactive to the effective date of his Permanent Incapacity according to the Social Security Administration.

30.     On May 11th, 2018, the Plan Administrator sent a letter to Mr. Hart's counsel, denying his request for Permanent Incapacity Pension benefits retroactive to August 11, 2007. The Plan Administrator's stated basis for this decision was that:

> "[P]er the Plan's terms at Section 4.2(g)(1), the [retroactive annuity start date] may not be more than 60 days prior to the date the Participant notifies the Plan Administrator of his intent to commence benefits."

31.     In its May 11th, 2018 letter, the Plan Administrator moved the start date of Mr. Hart's Permanent Incapacity Pension from April 1st, 2018 to February 1st, 2018.

32.     On July 9th, 2018, counsel for the Plan sent Plaintiff's counsel a letter indicating that Mr. Hart's claim for a Permanent Incapacity Pension payable retroactive to August 11, 2007 was denied. The basis for the denial was that:

> "Per the Plan's terms at Section 4.2(g)(1), a retroactive annuity starting date may not be more than 60 days prior to the date the Participant notifies the Plan Administrator of his intent to commence benefits."

33.     Counsel for the Plan further confirmed that Mr. Hart's commencement of the Permanent Incapacity Pension benefit using the February 1, 2018 annuity starting date would not prevent him from continuing to pursue his claim for benefits dating back to 2007.

34.     On August 9th, 2018, Plaintiff timely filed an appealed with the Plan Administrator, appealing the Plan's decision to claim for a Permanent Incapacity Pension payable back to October of 2007.

35.     On October 8, 2018, the Plan Administrator, the Plan, and the Plan Supplement, denied Plaintiff's appeal

36.     Plaintiff has properly exhausted his internal administrative remedies with the Plan and the Plan Supplement before filing this suit.

5

37.     The Plan Administrator improperly ignored or overlooked the plain language of the Plan and the Plan Supplement in denying Plaintiff's claim for a Permanent Incapacity Pension benefits back to October 1, 2007.

38.     The Plan and the Plan Supplement's decision further was illegal, in violation of the anti-forfeiture provisions of 29 U.S.C. § 1053, and ERISA's implementing regulations.

### III. CLAIM FOR RELIEF

39.     Paragraphs 1-38 are hereby re-alleged and incorporated herein by reference.

40.      The Defendants have acted intentionally, arbitrarily, capriciously and without reasonable justification in denying Mr. Hart's Personal Incapacity Pensions Benefits back to October of 2007, in violation of the Plan and the Plan Supplement and ERISA.

WHEREEFORE, the Plaintiff, Carl Hart, requests that this Honorable Court enter Judgment:

   A. Finding that Carl Hart is entitled to back Permanent Incapacity Benefits under the Plan and the Plan Supplement, to October 1, 2007, and ordering the Defendants to pay the past due benefits, under 29 U.S.C § 1132;

   B. Awarding the Plaintiff interest on the amount of back benefits which remain unpaid;

   C. Awarding the Plaintiff reasonable reimbursement for attorneys' fees and costs incurred as a result of the Defendant's wrongful termination of benefits;

   D. Awarding all other relief as may be just and appropriate, including such equitable relief as may be appropriate under 29 U.S.C. § 1132(a)(3).

Respectfully submitted,

/s/Jonathan E. Halm
JONATHAN E. HALM, Atty. #27133-45
Abrahamson, Reed & Bilse
8230 Hohman Ave. Street
Munster, Indiana 46321
(219) 595-5306
Fax (219) 513-9754
aralawfirm@aol.com

*Attorney for Plaintiff, Carl Hart*